Heimbach, Appellant, *v*. Peltz.

Argued January 12, 1956. Before STERN, C. J., JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Boyd H. Walker,* with him *Donald E. Wieland, Paul A. McGinley, Walker & Walker* and *Butz, Hudders, Tallman & Rupp,* for appellants.

*Robert H. Jordan,* with him *Edwin K. Kline, Jr.* and *Kline & Kline,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 13, 1956:

On the night of July 17, 1953, an automobile owned and operated by Walter E. Peltz collided with a tractor-trailer owned by Penn Farms on Route No. 100, between Macungie and Shimerville in Lehigh County, with resulting injuries to Peltz and the three passengers riding with him, namely, his wife Susan M. Peltz, Paul O. Heimbach and Esther F. Heimbach. They all filed trespass actions against Penn Farms which brought in Peltz as an additional defendant except, of course, where he himself was the plaintiff. The cases were consolidated for trial and the jury returned verdicts in favor of the individual plaintiffs against Penn Farms, at the same time exonerating Peltz of liability.

The lower Court refused motions for judgments n.o.v., but awarded a new trial on the basis that the verdicts were against the weight of the evidence, that the plaintiff Peltz had failed to make out a case free

of contributory negligence and did not meet the burden of proof establishing negligence on the part of Penn Farms.

At about 10:30 p.m., on July 17, 1953, Walter E. Peltz was driving his 1950 Dodge Sedan southwardly on Route 100, climbing a hill surmounted by an "S" curve, when he detected light beams of an approaching vehicle not yet visible in the surrounding darkness. He slowed down his speed from 25-30 miles per hour to less than 10 miles per hour and continued the ascent in second gear. When about 50 to 70 feet from the beginning of the "S" curve, a tractor-trailer loomed ahead of him on his (Peltz's) side of the road. For traffic moving southwardly the immediate curve swept to the right, for the tractor-trailer the curve bent to its left. The tractor-trailer was a towering gargantuan vehicle of some 23,000 pounds with an over-all length of 45 feet and was travelling at 30 to 35 miles per hour. Entering the curve, it cut through the center of the arc and proceeded into the inner lane, the driver apparently intending to get back to his own side of the road after he had left the curve behind him. It was while he was in this transitory phase of movement that he found himself confronting Peltz. Both drivers reacted instinctively. Peltz swung to his right to give the tractor-trailer as wide a berth as possible, his right wheels seizing and straddling the shoulder of the road and his left wheels moving 6 or 7 feet to the right side of the white line which divided the 21-foot wide highway in two. The driver of the tractor-trailer, on the other hand, cut sharply to his own right to get back to the outer rim of the circle which, of course, he should never have left. He succeeded in getting the tractor part of his vehicle into its proper lane but the front part of the trailer, loose-jointed and more difficult of maneuverability, continued far enough ahead to collide

with the left front of Peltz's car, dragging it some 15 or 20 feet "around". The whole front of Peltz's car was demolished and all the riders, including Peltz himself, were injured.

William D. Herstine, the driver of the tractor-trailer, testified that the accident did not happen on the inner side of the curve, as the plaintiff witnesses declared, but on the outer side and was due to Peltz's departing from his side of the road to invade the northbound lane.

Within 45 minutes after the collision, an amateur photographer arrived on the scene and took several pictures which were introduced in evidence at the trial. The lower Court apparently assigned to these pictures the solemnity of documents bearing authoritative finality and, upon them, decided that Peltz's version of the accident was not to be believed. The factual issue before the court and jury was whether Derstine propelled his tractor-trailer into the front of Peltz's car, or whether Peltz drove his Dodge Sedan into the tractor-trailer. The lower Court concluded that "this mute evidence [the photographs] corroborates defendant's testimony that it was the plaintiff who drove his vehicle into the left hand side of the road and collided with the defendant's vehicle." The Court then went on to say that "If the oral testimony is shown by proven physical evidence to be untrue, it must be rejected."

The incontrovertible physical facts rule, upon which the Court below based its conclusion, does not award to photographs the infallibility contemplated by the Court of Lehigh County. A photograph is merely pictorial testimony. While it is properly assumed that the lens of a camera will not lie, the reliability of the resulting product, insofar as evidence in a factual controversy is concerned, depends on many factors which have little to do with the fidelity of the mechanical

process which transfers a physical object from tangible reality to an intangible image on paper. Many questions must be answered before a photograph may be accepted as incontrovertible. When was the picture taken? Had the photographed objects been moved since the happening which is the subject of dispute? Who took the picture? At what angle was the shot made? It is common knowledge that a given condition may be so photographed from different angles as to produce conflicting views of the situation under the camera's lens. The formidable Wigmore speaks of photographic testimony with vigor and conviction, as follows: "We are to remember, then, that a document purporting to be a map, picture, or diagram, is, for evidential purposes simply nothing, except so far as it has a human being's credit to support it. It is mere waste paper,— testimonial nonentity. It speaks to us no more than a stick or a stone. It can of itself tell us no more as to the existence of the thing portrayed upon it than can a tree or an ox. We must somehow put a testimonial human being behind it (as it were) before it can be treated as having any testimonial standing in court. It is somebody's testimony,—or it is nothing. It may, sometimes, to be sure, not be offered as a source of evidence, but only as a document whose existence and tenor are material in the substantive law applicable to the case,—as where, on a prosecution for stealing a map or in ejectment for land conveyed by deed containing a map, the map is to be used irrespective of the correctness of the drawing; here we do not believe anything. because the map represents it. But whenever such a document is offered as proving a thing to be as therein represented, then it is offered testimonially, and it must be associated with a testifier." (III Wigmore on Evidence, §790, page 174).

The testifier in the case at hand was unable to establish that the vehicles had not been moved between the time of the accident and the time he unslung his camera: "Q. Whether these cars were moved in any way between the time of the collision and the time you took these pictures, of course, you wouldn't know that? A. I see them as I see them on the pictures. Q. Whether they were this way immediately after the collision, of course, you don't know? A. I do not know that."

The photographs do not show the whole highway at the point of accident, they fail to reveal just how the collision occurred, they are dumb as to who arrived at the curve first, they give no clue as to the location of the plaintiff's and defendant's vehicles at any given moment before the crash. A geologist may reconstruct a geological age from a rock and a paleontologist may rebuild the skeleton of a prehistoric animal from a stray bone, but a still photograph cannot unfold the happening of an incident made up of moving objects.

Nor are the photographs in this case unanimously acceptable as conclusive. Although the Court below said: "Plaintiffs do not deny that photographs represent the conditions therein portrayed," some of Peltz's testimony is to the contrary: "Q. Does that picture represent where your car and the trailer collided? Does that show the point of impact between your car and the trailer? A. He didn't hit me right there. That ain't it. He just drug me so far and let me go. That ain't the impact. He hit me with the front of the trailer. . . . Q. I show you Defendant's Exhibit number '4'. The skid marks that you refer to are over on the truck's side of the road. Are they not? A. They look that way to me. I don't see no white line. . . . Q. Showing you Defendant's Exhibit '2', that was about the angle at which your car was moving at the time of the impact. Was

it not? A. This was after it was standing. Q. How far did your car move after the impact? A. It must have moved from up in there over. The accident was up in here where he collided, and he drug me around."

What we said in the case of *Keck v. Phila. Rapid Transit Co.*, 314 Pa. 389, could well apply to the issue here: "There is certainly nothing in the pictures of the after-crash conditions of the trolley car and automobile respectively which can be termed 'incontrovertible physical facts,' stamping plaintiff's story of the accident so totally incredible as to justify the court below to so declare as a matter of law. The rule as to incontrovertible physical facts discrediting the testimony of one side in an action of trespass is applicable only in clear cases. In Ross v. Riffle, 310 Pa. 176, 164 A. 913, this court said in an opinion by Mr. Justice Drew: '. . . Unless the evidence stands definitely opposed to incontrovertible physical facts, the case must be submitted to the jury, no matter how strong the countervailing proof may be.' "

In *Chapple v. Sellers*, 373 Pa. 544, 549, we said: ". . . the position of a moving truck cannot be fixed by oral testimony as an 'incontrovertible physical fact.' We said in Snyder v. Penn Liberty Refining Co., 302 Pa. 320, 322, 153 A. 549, (KEPHART, J.) : '. . . the position of a moving object that causes the injury, as shown by certain evidence, cannot be called an "incontrovertible physical fact" when other evidence or inferences therefrom show the position of the object to be elsewhere at the time of the accident.' "

It is to be noted further that even taking the pictures at their face value, they do not disprove the contention of the plaintiffs to the point of demolition. There was testimony that the tractor-trailer dragged Peltz's car over the white line. The fact, therefore, that some of the photographs show Peltz's car on its

wrong side of the road does not conflict with the plaintiffs' testimony as to how the accident occurred.

On the subject of contributory negligence, the Court below said that it was "the duty of the plaintiff to make out a case free of contributory negligence." But this does not mean that the plaintiff had to establish by any particular piece of evidence that he was not negligent himself. There is no formula that the plaintiff is obliged to follow in meeting the requirement that his case is to be free of fault. It is misleading to say that there is a "duty" on the plaintiff in the sense that he has an affirmative burden to show that he was *not* negligent. He is not compelled to produce evidence to exculpate himself from an automatic charge of contributory negligence simply because he is the plaintiff in a negligence action. He carries no onus to do any particular thing in this respect. His task is to prove by a preponderance of evidence that the defendant was negligent and that that negligence was the proximate cause of his misfortune. The plaintiff is not called upon to establish, as he produces the chain of evidence which binds the defendant in trespass, that in each link of that chain there is no alloy of contributory negligence. It is not obligatory on him, for instance, to demonstrate that he held his hand on the driving gear at any particular angle or that he adopted a certain posture, in order that it be shown that he was free of contributory negligence. In *Adams v. Gardiner,* 306 Pa. 576, we quoted with approval from 20 Ruling Case Law, sec. 162, that the plaintiff " 'is under no obligation to prove the performance of any particular act by way of precaution against injury. If he succeeds in establishing a prima facie case—that is, one from which it does not appear that he was negligent—the defendant has cast upon him the burden of introducing evidence in rebuttal thereof.' "

In the presentation of the plaintiff's case there was no revelation of contributory negligence. If the defendant believed Peltz to be at fault it was incumbent upon the defendant to charge contributory negligence. The defendant did so charge, and the plaintiff denied the accusation. It then was up to the jury to determine on which side of the highway of contention the truth lay. It found that the defendant's tractor-trailer did cross over the white line in the middle of the road to invade the plaintiff's lane of travel. In making this finding, it arrived at the conclusion that the defendant was guilty of negligence and the plaintiff was free of contributory negligence.

A careful review of all the evidence in the case fails to reveal any reason for a re-trial of this lawsuit. The record shows that justice has been done. The order, therefore, granting a new trial is reversed and the record is remanded for the entering of judgment on each of the several verdicts rendered.