Hamilton, Appellant, *v.* Fean.

374

Argued April 25, 1966.   Before Bell, C. J., Mus-
manno, Jones, Cohen, Eagen, and O'Brien, JJ.

*William C. Archbold, Jr.,* for appellants.

*John S. J. Brooks,* with him *James Patterson,* and
*Brooks, Macartney & Holl,* for appellees.

Opinion by Mr. Justice Musmanno, June 24, 1966:
On the evening of August 24, 1960, the plaintiff,
Mrs. Helen Hamilton, and her two friends, Mrs. Mary
Foster and Miss Marie Fean, had visited a hospital,
returned to the home of Mrs. Hamilton and then set
out in Mrs. Foster's automobile to take Miss Fean to
her home.   Mrs. Hamilton went along to give Mrs.
Foster company on the way back after they would have
left Miss Fean at her home.   When the three ladies

arrived at Miss Fean's home, Mrs. Foster's automobile stalled and a telephone call was made to an automobile repairman. While waiting for the repairman to arrive, the three ladies went out on the Fean home porch, particularly to guide the repairman in the event he might have difficulty in locating the house, it then being midnight.

As they conversed and walked about, they occasionally leaned against the railing surrounding the porch. Mrs. Hamilton was resting against the pillar to which the railing was attached when the latter suddenly gave way and they all fell to the driveway beneath, fortunately not too far away. Nevertheless, Mrs. Hamilton sustained serious injuries and she brought suit against the owner of the house, Mrs. Catherine Fean. Her son, Alvin Fean, who had supervised repairs to the property and was regarded as agent for Mrs. Fean, was later added as a co-defendant.

The jury returned a verdict in favor of the defendants and the plaintiff has appealed for a new trial, alleging trial errors attributed to the trial judge. The judge charged the jury that since Mrs. Hamilton was a gratuitous licensee she was to be classified in the "lowest" of the category of guests and that, therefore, the defendant owed her only a "modest" responsibility as to due care. There is no such thing as a "modest" responsibility in the law. Responsibility exists or does not exist. There can be modification of care required, of course, and it is all spelled out in the books, but a modest responsibility is not defined nor can it be defined at law. Nor can an invited person be placed in the "lowest category" of guests. No matter how far down the guest may be listed in the social register and no matter how patience-taxing he may be, he certainly would not rate lower than an uninvited bore. Moreover, Mrs. Hamilton was at the Fean home more as a helping companion than as a gratuitous guest. She

had accompanied Mrs. Foster who had made the trip to the Fean home for the accommodation of Miss Fean. Mrs. Hamilton, therefore, was entitled to that due care which would ensure her of being informed of a latent defect factually or impliedly known by the landlord. (*Matthews v. Spiegel*, 385 Pa. 203.)

The fact that neither Mrs. Catherine Fean, owner of the Fean house, nor her son Alvin Fean, was at home on the night of the accident, could not reduce their liability as landlords if in fact they were responsible for any defect in the structure of the house. Thus it was error for the court to charge the jury, as it did: "He [Alvin Fean] didn't have to maintain it necessarily in a safe condition; but if it wasn't in a save (sic) condition he has a duty to warn these people. But you will take into consideration that neither he nor his mother was there the night this happened."

Plaintiff's counsel objected to this portion of the charge whereupon the court endeavored to explain: "They have the duty to warn, if they know of the condition they have the duty to warn guests. Now whether they were there or whether they weren't, if you feel that they should have known that guests might be there and might lean on the rail, then they might have been negligent in not warning. A mere not being there may not necessarily absolve them." This statement by the judge told the jury that absence *could* absolve the defendants from liability. The man who plants a bomb and then absents himself from the explosion is as responsible for the harm the explosion inflicts on others as if he had lighted the bomb and thrown it at the victims. Whatever fault could be ascribed to the defendants for an allegedly defective railing did not arise the night of the accident so that it did not matter whether they were present or not. Their averred responsibility lay in the fact that they had allowed the railing to become defective and had

done nothing to repair the defect. The use by the court of the phrase "might have been" is indeed only a paper stanchion charged with the responsibility of holding in place a railing of control. It necessarily implies the possibility that the defendant might *not* have been regarded negligent because absent which fact, as indicated, is wholly irrelevant. Where a latent defect is involved, the geographical distance between the defective instrumentality and the landlord is no more relevant than the color of his mustache.

Prior to the rendering in open court of the final verdict, the jury sent to the trial judge a note which said: "Since we find contributory negligence on both sides—How do we state our verdict?"

The judge instructed the jury that "in that case" they would write the word "Defendants" on both verdict slips. It is evident from this exchange, that, regardless of defendants' negligence, the jury, under the court's charge, could not have returned a verdict for the plaintiff since they found she was contributorily negligent. It is important, therefore, in view of the plaintiff's request for a new trial, that we examine what was said on the subject of contributory negligence. After properly explaining that the mere placing of the hands on the rail or a "slight leaning against it" would not constitute contributory negligence, the court wholly nullified that negation by stating: "You are the ones who say what is negligence. Now if you find it to be negligent then of course it bars."

To say that the mere touching or a slight leaning against a porch railing is negligence is obviously untenable. What is a railing for? The most elementary thing for people to do is to lean against something. Man is either naturally lazy or Nature, knowing of man's constant exertion throughout the day, induces him to rest at every opportunity even if only for a moment against a railing, fence, pillar or wall.

In view of the fact, as has been stated, that the jury's verdict was predicated upon the plaintiff's contributory negligence, every part of the court's charge which incorrectly stated that any particular act constituted contributory negligence must be regarded as fatal error.

Although Mrs. Hamilton testified that she was leaning against the pillar into which the railing was anchored when the latter detached from its fastenings, she did also say that her hand was resting on the railing. If the jury gave to the court's words literal applicability and there is no evidence that they did not, then the court's saying that a mere touching of the railing constituted contributory negligence was an erroneous statement of the law.

There was no evidence, photographic or otherwise, which would have put the plaintiff on notice that the railing was defectively constructed or defectively attached. On the contrary, the evidence would suggest that the railing was of sturdy construction.

The court correctly charged that the plaintiff had to prove that the defendant's negligence, if it existed, was the proximate cause of the accident in order to recover, but it did not similarly charge that the contributory negligence, in order to deny recovery to the plaintiff, had also to be a proximate cause of the accident. While it is true we have numerously held that the slightest degree of contributory negligence will prevent a verdict for the plaintiff, we have made it quite clear that that slightest negligence must contribute to the happening of the culminating episode of the mishap. A motorist may be driving an automobile equipped with only three wheels when four are required but if he is stationary on the highway and is hit by a car traveling on its wrong side of the road, the three-wheeledness of his car can in no way be regarded as contributing to the accident.

The trial court in the case at bar leaned heavily on the barrier of contributory negligence, mentioned it at least a score of times but never once did it say that contributory negligence, in order to prevent the plaintiff from recovering, had to contribute to the accident. In fact, by the process of parallelism it excluded that inescapable requirement. "You must find the defendants to have been negligent, and you must find that the plaintiffs in no way were guilty of contributory negligence before there can be a verdict. And if you do find the defendants to have been negligent, you must also find that their negligence was the proximate cause of the accident." Thus, the defendant's negligence had to be the proximate cause of the plaintiff's injury in order to fix liability on them, but the plaintiff's negligence did not have to contribute to the accident in order for her to be denied a verdict.

The court graphically pointed out that, as contended by the defendants, the combined weight of the three ladies was something between 400 and 500 pounds, and that if they sat and leaned against the railing for three-fourths of an hour, and the railing collapsed, this "would not indicate that it was in unsatisfactory condition." But it added: "And, of course, if that leaning was in any degree, in your opinion, negligence on the part of Mrs. Hamilton, then as I have said to you that would be contributory negligence and would bar recovery."

Thus, no matter how few pounds Mrs. Hamilton may have contributed to the 500 pounds pressure she could not win. The last straw may break the camel's back but there is no evidence here that it was Mrs. Hamilton's weight which contributed to the crash in any way. Moreover, there was no evidence that any one sat on the railing. Mrs. Marie Fean said: "Q. Do you recall that I asked you whether any of you were sitting on the railing and you said not to your knowl-

edge; do you remember that? A. Yes, I do. I didn't say we were sitting now. I said I was leaning."

Mrs. Hamilton testified, as already indicated, that she was leaning against the column when the railing fell. But, according to the trial court, the slightest leaning "in any degree" on the part of Mrs. Hamilton upset her equilibrium and caused her to fall out of court in her lawsuit. This is not the law. Mrs. Hamilton's leaning had to contribute to the wrenching loose of the rail for her to be excluded from a favorable verdict. Even if she had been leaning against the railing but her weight in no way jeopardized the solidity of the railing, she could not be held responsible for the accident if the railing flew out because of the additional avoirdupois contributed by one or both of the other ladies.

All this the court should have explained to the jury. In *Hess v. Mumma*, 136 Pa. Superior Ct. 58, the Superior Court said: The trial judge . . . "failed to enlighten the jury as to what facts would constitute contributory negligence on the part of Plaintiff, or negligence on the part of Defendant in view of the testimony, and hence the jury had no guide by which to regulate their action in determining the controverted facts."

In *Eisert v. Jones*, 399 Pa. 204, this Court said: The trial judge has the duty "so to clarify the issues that the jury will understand what they have to decide."

In denying the plaintiff's motion for a new trial, the trial court said: "There was evidence that the three grown women had been sitting on the porch rail while waiting for an automobile to be repaired, disdaining porch chairs, and the jury felt that porch rails are not designed for such use, one of the women at least had her legs and feet entwined. in the railing for a more secure seat."

The "entwining" visualized by the trial court derived probably from the testimony of Mary Foster who said, explaining her condition *after* she fell: "I think my leg was tangled up a little in the spokes."

This does not bear out the picture of 500 pounds of womanhood "disdaining porch chairs" and balancing precariously on a railing "not designed for such use." In the first place this accident occurred at midnight. The women were not there to recline in chairs in the sun or even to bask in the moonlight of nocturnal gossip. They were waiting for an auto mechanic to repair the car so that Mrs. Foster and Mrs. Hamilton, who, after having performed the service of taking Miss Fean to her home, could now return to their own respective homes. At any moment they expected the automobile mechanic to arrive and so they walked, talked and occasionally leaned against the railing which is what railings, more or less, are for. A railing that cannot withstand the temporary leaning weight of 500 pounds distributed among three persons is obviously not a good railing. At any rate, this was all a question for the jury to determine under a charge which did not unduly push against the balustrade of unintentional partiality.

The jury found negligence on the part of the plaintiff and the defendants so that it evidently never got to the question of damages. It is very possible, however, that the court's charge on damages may have influenced the jury in its deliberation on the question of liability. In speaking of damages the court appropriately instructed the jury that the "award must be the result of your sound and sober judgment, based on the facts of this case and on your own experience and observations in life," but then it added: *"You should treat the problem as if your own interests were involved."* (Emphasis supplied.)

There is scarcely a point of law on which there is unanimity of view. The law books fight with one another, court opinions contest for supremacy among competitive ideas, but there is one proposition on which all voices sing in the same key, and that is, a jury must never enter into the litigation as partisans. The jury box is in No Man's Land and it must be as far removed from either side as the width of the Grand Canyon. Thus it was wholly unwise to say to the jurors: "You should treat the problem as if your own interests were involved." Even though, as stated, this remark was directed to the jury in their eventual deliberation on damages, it could well have influenced them, in considering liability, to regard themselves as porch owners, householders and landlords, jealously guarding their "own interests."

In view of the fact that this case is going back for retrial, a brief reference will be made to other items raised by plaintiff's counsel so that procedural rocks and trial shoals may be avoided as the parties again sail the seas of adversary conflict.

Hospital records must be properly authenticated. *Hagopian v. Eskandarian*, 396 Pa. 401; *Fauceglia v. Harry*, 409 Pa. 155. Cross-examination is to be held within bounds. *Okotkewicz v. Pittsburgh Railways Co.*, 397 Pa. 303.

Plaintiff's counsel objected to certain questioning by defendant's counsel. The court ruled: "We would assume that Mr. Brooks would not be asking questions of that nature unless he is in a position to prove what he is talking about." A trial court should be cautious about offering carte blanche anticipatory authentication in the presence of the jury.

The authority of an agent must be interpreted in the light of accompanying circumstances. *Brock v. Real Estate-Land Title and Trust Co.*, 318 Pa. 49.

It is proper to admit photographs of a locus in quo even though taken 15½ months after the accident if it is established that the object in controversy is in the same condition it was at the time of the litigated event. *Schaff v. Meltzer,* 382 Pa. 43.

Judgment reversed with a venire facias de novo.

Mr. Justice EAGEN concurs in the result.

Mr. Justice JONES dissents.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I strongly dissent. I note in passing that appellants were satisfied by the ruling or explanation of the trial judge in response to every specific objection appellants made to the charge of the court, with the result that appellants' attorney in practical effect took only a general exception to the charge, and did not even see molehills of error where the majority see mountains of mistakes.