363 A.2d 1291
Anthony PUSHNIK
v.
WINKY'S DRIVE IN RESTAURANTS, INC.,
a corporation, et al., Appellants,
v.
Walter J. SMITH et al.
Appeal of JIFFY STEAK COMPANY.

Superior Court of Pennsylvania.
Sept. 27, 1976.

328

James F. Manley, Pittsburgh, for appellant in No. 285.

W. Arch Irvin, Jr., Pittsburgh, for appellant in No. 299.

George A. Conti, Jr., Edgar P. Herrington, Jr., Patrick R. Riley, Costello & Berk, Greensburg, for appellee.

PRICE, Judge.

Defendant-appellant Winky's Greensburg, Inc. (Winky's), operates a restaurant at the intersection of Route 119 and Huff Avenue, in South Greensburg, Pennsylvania. In 1969, the food-service aspect of Winky's

operation could have been characterized by its efficiency. All food was prepared "to go." No tables or seats were provided for patrons. A diner had the option of partaking of his repast while seated in his automobile in the parking lot provided by Winky's or of taking his meal elsewhere. Orders were placed by entering a glass-enclosed anteroom in front of the building. There, the customer approached a window over a stainless steel counter and gave the order to a waiting clerk. The clerk placed the ordered items in a bag, the customer paid his bill, and the transaction was completed.

On the fateful day of March 23, 1969, plaintiff-appellee Anthony Pushnik entered the glass-enclosed anteroom and ordered a meal. At the same time, defendant Walter J. Smith had just finished his meal while seated in his automobile, and was preparing to depart. Smith's automobile was parked directly in front of the glass-enclosed room. Smith testified that he started his automobile, and, due to some slippery matter on his right shoe, his foot slipped from the brake to the accelerator. The automobile responded instantly, crashing through the glass enclosure and pinning Mr. Pushnik against the stainless steel counter. Mr. Pushnik, no match for his two steel oppressors, suffered severe injuries.

Mr. Pushnik filed a suit in trespass against Winky's, Winky's Drive In Restaurants, Inc., and Saralouise F. Rose (now Saralouise F. Hirshberg). Winky's joined Nathan Cantor and Walter Smith as additional defendants. Mrs. Hirshberg joined Smith, Cantor, and Jiffy Steak Company (Jiffy) as additional defendants.[1]

At the close of appellee's case, the lower court granted compulsory nonsuits in favor of Mrs. Hirshberg and

1. Winky's and Winky's Drive In Restaurants, Inc. are both wholly owned subsidiaries of Jiffy. Mrs. Hirshberg is the owner and lessor of the property on which Winky's is located. Nathan Cantor is the architect employed by Jiffy who designed the building in which Winky's conducted its business.

Winky's Drive In Restaurants, Inc. The case then proceeded to conclusion and a jury awarded appellee a verdict of $75,000.00 against Jiffy, Winky's, and Smith. The jury found in favor of Nathan Cantor. Jiffy and Winky's have appealed the judgments entered on the verdicts against them. Mr. Smith is not a party to this appeal.

Appellee based his cause of action against Jiffy and Winky's on the theory that the appellants negligently failed to warn him of a dangerous condition existing on the land or to put the premises in a reasonably safe condition. *See Argo v. Goodstein*, 438 Pa. 468, 265 A.2d 783 (1970); *Crotty v. Reading Industries, Inc.*, 237 Pa. Super. 1, 345 A.2d 259 (1975). Appellee charges that the appellants were placed on notice of the dangerous condition of the property by the fact that two similar accidents had occurred in the past, one in 1966 and one in 1967.[2] Appellee contends that once appellants were notified of the dangerous condition, they were under a duty, at least, to take some precaution against future accidents, such as erecting a barrier between the parking lot and the glass enclosure.

Appellants contend that the lower court erred in denying their motions for judgments N.O.V. because, even assuming negligence on their part, they cannot be held liable because their conduct was not the proximate cause of appellee's injuries. More specifically, Jiffy contends that the sole proximate cause of the accident was the negligence of the driver, Smith, while Winky's contends that Smith's conduct was a superseding cause of the accident.

This court recently had the opportunity to examine similar arguments in *Noon v. Knavel*, 234 Pa.Super. 198, 339 A.2d 545 (1975). In that case, the plaintiff was injured while making a telephone call when an uncontrolled

2. Fortunately, no one was seriously injured in either of these accidents.

automobile careened through the telephone booth that he was occupying. The plaintiff sued, *inter alia*, the owner of the booth, General Telephone Company of Pennsylvania, charging that the defendant had been negligent in locating its booth in a dangerous area. The defendant appealed a judgment in the plaintiff's favor, contending in the alternative that its conduct was not the cause of the plaintiff's injuries, and that the automobile driver's negligence was a superseding cause of the injuries. This court, interpreting the applicable law as stated by the Supreme Court of Pennsylvania, rejected both arguments.

Applying the same principles of law utilized in *Noon v. Knavel, supra,* it must first be determined whether appellants' conduct was a substantial factor in bringing about the appellee's harm. *Restatement (Second) of Torts* § 431 (1965) ; *Flinkinger Estate v. Ritsky,* 452 Pa. 69, 305 A.2d 40 (1973). To have been so, appellants' conduct must have been a factual cause of the harm. *Restatement (Second) of Torts* § 432(1) (1965) ; *Noon v. Knavel, supra.*

In this case, appellants do not contest the fact that their negligence was a factual cause of the harm, nor could they do so. It cannot be said that appellee would have sustained the same harm if appellants had not been negligent. For example, if appellants had erected a barrier in front of the building, it is probable that the harm would not have been sustained. Thus, appellants' conduct was a factual cause of appellee's injuries.

Once it is determined that appellants' conduct was a factual cause of the harm, whether the conduct was a substantial factor in bringing about the harm is, under these circumstances, interrelated with whether any of the other factual causes were superseding causes. If appellants' conduct was the only factual cause of the harm, then, obviously, it was a substantial factor in

causing the harm. Only if some other cause was a superseding cause can appellants' conduct be said to have not been a substantial factor. Therefore, we must next consider appellants' argument that Smith's conduct was a superseding cause of the harm.

The law of superseding cause is related in *Restatement (Second) of Torts* §§ 440–61 (1965). As in *Miller v. Checker Yellow Cab Co.*, 465 Pa. 82, 348 A.2d 128 (1975), and *Noon v. Knavel, supra*, §§ 447 and 449 are determinative of the issue in this case. § 447 provides:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

§ 447 is aided in its application by § 449:

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."

■ Here, appellee alleged and a jury found that appellants were negligent because they failed to take precautions against the likelihood that an automobile would

crash through the front of their restaurant. That type of accident had occurred twice prior to the accident in which Mr. Pushnik was injured, and it was the very foreseeability of another such accident which made negligent appellants' failure to act.

Because the failure to protect against that risk is exactly the element of appellants' conduct that was negligent, appellants cannot now contend that the fruition of their negligence was superseded by the negligence of another. The likelihood that an automobile would crash through the glass enclosure, whether due to negligence or mere happenstance, is exactly what made appellants' conduct itself negligent. *Restatement (Second) of Torts* §§ 447, 449 (1965); *Miller v. Checker Yellow Cab Co., supra; Noon v. Knavel, supra.*

Jiffy also contends that it is not liable because, as a matter of law, it was not in control of the premises where the accident occurred. Jiffy contends that Winky's had sole and exclusive possession of the premises and that Winky's and Jiffy are separate legal entities. There can be no doubt that Winky's and Jiffy are separate corporations, and if Jiffy had been able to establish that it was not in control of the premises, we would have to concede to Jiffy's argument. However, it is abundantly clear from the record that the division of control between Jiffy and Winky's was anything but definite.

The testimony of Harold Erenstein, executive vice-president of Jiffy, revealed that Jiffy leased the land for Winky's from Mrs. Hirshberg and then sub-leased the land to Winky's. Jiffy hired and paid the architect and contractor responsible for building Winky's. Subsequent to the time of the accident, a decision was made to alter the structure of Winky's to provide seating space for customers in the restaurant. That decision was made and the alterations were paid for by Jiffy.

In addition, Jiffy employed supervisors who made periodic inspections of Winky's. The supervisors were responsible for hiring, training, and firing the management of Winky's. If a disagreement arose between a supervisor and a manager, the supervisor would control.

Finally, when accidents occurred at Winky's, the manager was responsible for filing reports with Jiffy. In this case, the manager did file a report.

From the above facts, we cannot conclude that Jiffy was not in control of the premises on the date of the accident as a matter of law. On the contrary, it appears that if safety precautions were dictated, Jiffy would have been responsible for taking those precautions. Therefore, the lower court properly denied appellants' motions for judgments N.O.V.

■ The appellants additionally allege several errors which, they contend, merit a new trial. The first allegation is that the lower court erred in granting a compulsory nonsuit in favor of the original defendant Mrs. Hirshberg, before the additional defendants were given an opportunity to present their case against her. In general, we agree with appellants that it is improper to grant a nonsuit in favor of an original defendant before the additional defendants have had the opportunity to present their case. The additional defendants have the right to prove, if they can, that the original defendant is solely liable for the harm or jointly liable with the additional defendants. *See Frank v. W. S. Losier & Co.*, 361 Pa. 272, 64 A.2d 829 (1949); *Smith v. Lit Brothers*, 174 Pa. Super. 102, 100 A.2d 390 (1953).

■ Though the court's action may have been error, in this case, the error was undoubtedly harmless. As appellants recognize, Mrs. Hirshberg, as lessor of the property, was only liable for those portions of the land over which she retained control. *See Restatement (Second) of Torts*, §§ 355, 360–62 (1965). Mr. Erenstein

testified that Mrs. Hirshberg had no control over the construction or design of the building; she had never seen the plans for the building; and Jiffy had the right to prevent Mrs. Hirshberg from entering on the property. Under these circumstances, it would have been impossible for appellants to have established liability against Mrs. Hirshberg. Indeed, appellants allege no facts in their brief which, if proved, could establish liability on her part.

Appellants also contend that a new trial must be granted because the word insurance was mentioned during trial. However, it is well established that the mere mention of the word insurance does not necessitate a new trial. There must be some indication that the defendants were prejudiced. *Bortz v. Henne*, 415 Pa. 150, 204 A.2d 52 (1964); *Fleischman v. Reading*, 388 Pa. 183, 130 A.2d 429 (1957); *Cain v. Kohlman*, 344 Pa. 63, 22 A.2d 667 (1941). In this case, insurance was mentioned twice by the same witness in the same context. The reference concerned the fact that after the 1967 accident, the manager of Winky's had sent a report to the driver's insurance company. Thus, there was no reference to the fact that any of the defendants were insured. Therefore, a new trial is not required under these circumstances.

Another error alleged to require a new trial is the fact that evidence was placed before the jury indicating that the structure of the restaurant was altered subsequent to the accident. It is true that evidence of subsequent repairs may be grounds for a new trial. *Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971). The "subsequent repairs doctrine" is justified both on grounds of prejudice and public policy. That is, the fact that subsequent measures have been taken to remedy a condition which has caused injury is not necessarily evidence that the unremedied condition was the result of negligence. Furthermore, to permit the introduction of such

evidence might discourage property owners from making needed repairs and thereby "incriminating" themselves in the eyes of the jury. *See J. Wigmore, Evidence* § 283 (3d ed. 1940).

In this case, however, the doctrine is inapposite. First, evidence of the subsequent alterations was introduced not to prove that precautions were needed, but to prove control of the premises. Second, the alterations were not precautionary in nature, but were undertaken to provide seating arrangements for customers. Finally, the first time the alterations were mentioned, appellants withdrew their objections and the court delivered a cautionary instruction to the jury. On the second occasion, no objection was interposed. Therefore, any error was waived. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

Jiffy contends that it was entitled to a directed verdict at the close of the plaintiff's case because of an uncorrected variation between the pleadings and the proof. Jiffy notes that the only negligence alleged by Mrs. Hirshberg in her complaint joining Jiffy as additional defendant was negligence in the design of the building. Because the unrefuted evidence established that the building was *not* negligently designed, Jiffy was entitled to a directed verdict. Jiffy's argument is logically appealing, but incorrect.

In *Sheriff v. Eisele*, 381 Pa. 33, 35, 112 A.2d 165, 166 (1955) our supreme court interpreted Pa.R.C.P. No. 2255 (d) as follows:

"[A]n additional defendant, when joined as such, becomes immediately subject to plaintiff's claim in every respect and with the same force and effect as if he had been originally named as a defendant, and even without the necessity of any pleading being filed by the plaintiff against him . . . ."

Thus, an additional defendant is subject to the allegations in the plaintiff's complaint as well as to the allegations in the additional defendant's complaint. *See also Burke v. Duquesne Light Co.*, 231 Pa.Super. 412, 332 A.2d 544 (1974).

■ Jiffy next contends that the lower court erred in allowing provisions of the lease between Mrs. Hirshberg and Jiffy to be read to the jury, citing *Green v. Independent Oil Co.*, 414 Pa. 477, 201 A.2d 207 (1964). We do not believe that the lower court committed reversible error. The only portions of the lease read to the jury were those identifying the parties. These segments were self-explanatory and resulted in no prejudice to Jiffy.

The remaining errors alleged by appellants concern the lower court's charge to the jury. We have reviewed the court's charge in its entirety, as we must, *Crotty v. Reading Industries, Inc.*, 237 Pa.Super. 1, 345 A.2d 259 (1975), and have concluded that the errors assigned by appellants are without merit.

The judgment of the lower court is affirmed.

SPAETH, J., files a concurring opinion in which JACOBS and HOFFMAN, JJ., join.

WATKINS, P. J., and VAN der VOORT, J., concur in the result.

SPAETH, Judge (concurring):

I agree with the majority's conclusion that the judgment should be affirmed but not with its discussion of proximate cause.

The majority correctly states that appellants are liable only if their "conduct was a substantial factor in bringing about the appellee's harm." However, in deciding whether appellant's conduct was such a substantial factor, the majority incorrectly applies the following test: first it

asks whether the conduct was a "factual cause" of the harm; and then it asks whether there was a superseding cause. "Only if some other cause was a superseding cause can appellants' conduct be said to have not been a substantial factor." At 1295.

In order to decide whether conduct is a substantial factor in bringing about harm, one must indeed first ask whether the conduct was a factual cause of the harm; but if the answer is that it was, one does not then jump to asking whether there was a superseding cause. While proof of factual cause is necessary to prove substantial factor, by itself it is not sufficient.

If the proof of substantial factor is to be sufficient, the plaintiff must show not only factual cause, *i. e.,* that the harm would not have occurred but for the defendant's conduct, but also that the defendant's conduct had

> such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense" which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophic sense", yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

Rest. Torts, Second § 431, comment a.

In deciding what the "ordinary mind would think," a number of considerations may be important, either by themselves or in a combination:

> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it:

> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a

situation harmless unless acted upon by other forces for which the actor is not responsible;

(c) lapsed time.

Rest. Torts, Second § 433.

When this test is applied to the facts of the present case, it appears that the proof of substantial factor was sufficient. First, the number of other factors contributing to the harm was not large; granted that the accident was unusual, it does not remind one of a Rube Goldberg sequence. And second, by taking no precautions after the earlier accidents, appellants continued to conduct an operation that they should have anticipated might produce the very harm appellee suffered.

Once it is shown that a defendant's negligent conduct is the proximate, or legal, cause of harm, the question becomes whether there is any "rule of law relieving the [defendant] from liability because of the manner in which his negligence resulted in the harm." Rest. Torts, Second § 431(b). Here the rule of law argued is that of superseding cause. Since I agree with the majority that there was no superseding cause, and since I also agree with its disposition of the other issues, I join in the order that the judgment should be affirmed.

JACOBS and HOFFMAN, JJ., join in this opinion.