# Jackson *v.* Pennsylvania Railroad Company, Appellant.

*Practice, C. P.—Trials—Answers to points—Charge—Harmless Error—Appeals.*

1. The mistake of a trial judge in unqualifiedly affirming a point which is not quite consistent with a correct general charge does not amount to reversible error when the verdict shows no resulting injury therefrom.

2. A point is properly refused when not based upon evidence which is uncontradicted.

*Railroads—Furnishing cars—Discrimination—Treble damages—Statutes—Repeal by implication—Acts of June 4, 1883, P. L. 72, May 31, 1907, P. L. 352, and P. L. 354.*

3. The second section of the Act of June 4, 1883, P. L. 72, which gives to any person, company or corporation discriminated against by railroads in rates charged and facilities for transportation afforded a right of action to recover treble the amount of injury suffered is not directly nor impliedly repealed by either the Act of May 31, 1907, P. L. 352, or the Act of May 31, 1907, P. L. 354.

4. Repeals of statutes by implication are not favored and will not be indulged unless it is manifest that the legislature so intended.

STEWART, J., dissents.

Argued April 20, 1910. Appeal, No. 397, Jan. T., 1909, by defendant, from judgment of C. P. Clearfield Co., Sept. T., 1906, No. 74, on verdict for plaintiff in case of Robert A. Jackson v. The Pennsylvania Railroad Company. Before BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass for damages under the act of 1883. Before A. O. SMITH, P. J.

The facts are set out in the opinion of the Supreme Court.

Plaintiff presented, inter alia, the following points:

5. That the measure of plaintiff's damages is the difference between the cost of mining and delivering the coal in railroad cars, adding thereto the royalty paid, and

the fair average selling price prevailing in the region
where his mine was situated, during the period extending
from March 26, 1902, and August 4, 1905, both inclusive,
for all coal which the jury find from the evidence the
plaintiff could have been reasonably able to mine and
sell, except for the refusal of the defendant company to
furnish his due proportion of all the cars available. *An-
swer:* Affirmed. [1]

6. That if the jury find from the evidence that the re-
fusal of the defendant company to furnish cars to the
plaintiff was undue and unreasonable, and also find from
the evidence that the plaintiff suffered loss or damage,
then the jury must ascertain how much loss or damage
the plaintiff sustained, and having ascertained the amount
of single damages they may multiply the same by three
or treble the amount and return a verdict for the treble
or threefold amount. *Answer:* Affirmed. [2]

Defendant presented these points:

1. That under the pleadings and evidence the plain-
tiff is not entitled to recover and the verdict must be for
the defendant. *Answer:* Refused. [3]

3. It appears by the uncontradicted evidence in the
case that plaintiff received from June 1, 1902, to June 1,
1903, covering the whole period of high prices, cars
greatly in excess of his pro rata share, and as his claim is
based upon a deficiency during the whole period and not
during a specified part thereof only, the high prices re-
ceived by him during the period named must be taken
into account in attempting to discover if he sustained any
loss, and there is no such evidence of loss during the re-
maining period as to justify a finding of any amount in
his favor and the verdict must be for the defendant.
*Answer:* This point is also refused.  It would be asking
the court to give binding instructions to the effect that
the verdict must be for the defendant, because during a
period of high prices it would appear by pretty plain
evidence, at least, that he got more than his pro rata
share would entitle him to.  We leave that whole ques-

tion for the jury, as to whether or not if orders were given for cars during the entire period and he would therefore be entitled, say to 760 cars, according to my calculation, and did not get that many, you should find that he was discriminated against. That is entirely, as we look at it, for the jury, governed, however, by one of the facts, if you find it to be a fact, that during that high priced period he did get a large proportion of cars more than he was entitled to, as affecting whether or not he was in fact damaged at all. [4]

4. There was no duty upon the defendant company to place cars at plaintiff's mine except upon orders made by him and then only for his pro rata share, and there is no sufficient evidence to so impeach the daily record of the orders made by the plaintiff, which record was made at the time, as to warrant the jury in finding a verdict that orders were made by plaintiff which appear by the record supplemented by the testimony of the train master not to have been made, and as there is no claim here except as based upon such allegation, there can be no recovery and the verdict must be for the defendant. *Answer:* Refused. [5]

Verdict for plaintiff for $705.87, single damages, on which judgment was entered for $2,117.51, treble damages. Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them.

*Francis I. Gowen* and *John G. Johnson,* with them *Thomas H. Murray, James P. O'Laughlin* and *Hazard Alex. Murray,* for appellant.—There can be no doubt that the legislature has, in the Acts of May 31, 1907, P. L. 352, and P. L. 354, dealt with the same subjects which it had previously dealt with in the act of 1883; and it must necessarily follow that provisions of the latter act are in so far repealed: Penna. R. R. Co. v. Bogert, 209 Pa. 589. And at least, treble damages can no longer be

recovered: Abbott v. Com., 8 Watts, 517; Com. v. Cromley, 1 Ashmead, 179.

*R. D. Swope*, with him *W. I. Swope*, for appellee.— The act of 1883 is not repealed by implication by the later acts of 1907: Sifred v. Com., 104 Pa. 179; Allegheny City v. McClurkan & Co., 14 Pa. 81; Wilkes-Barre v. Stewart, 16 Pa. Superior Ct. 347; Uhler v. Moses, 200 Pa. 498; Com. v. Vetterlein, 21 Pa. Superior Ct. 587; Rodebaugh v. Traction Co., 190 Pa. 358; Chicago, R. I. & P. Ry. Co. v. Zernecke, 82 N. W. Repr. 26; 55 L. R. A. 610.

OPINION BY MR. JUSTICE POTTER, July 1, 1910:

The plaintiff brought this action against the defendant company to recover damages under the provisions of the Act of June 4, 1883, P. L. 72, for undue discrimination in refusing to furnish to him, his fair proportion of cars for shipping coal, from his coal mine in Decatur township, Clearfield county, during the years 1902, 1903, 1904 and 1905. The case was submitted, upon the facts, to the jury and resulted in a verdict for $705.87, single damages, or $2,117.61, treble damages; and from the judgment entered thereon defendant has appealed. The assignments of error are all to answers to points submitted, as requests for charge to the jury. The first specification alleges error in affirming the fifth point presented by plaintiff which was as follows:

"5. That the measure of plaintiff's damages is the difference between the cost of mining and delivering the coal on railroad cars, adding thereto the royalty paid, and the fair average selling price prevailing in the region where his mine was situated, during the period extending from March 26, 1902, and August 4, 1905, both inclusive, for all coal which the jury find from the evidence the plaintiff could have been reasonably able to mine and sell, except for the refusal of the defendant company to furnish his due proportion of all the cars available."

Counsel for appellant in their argument do not criticise the measure of damages here suggested, except in so far as it includes in the average selling price, a period of abnormally high prices, during which time defendant claims that plaintiff got all the cars to which he was entitled. This was, however, a disputed question of fact. If the testimony of plaintiff is true, he did not at any time get his fair share of cars. We think the trial judge was perhaps not quite consistent in broadly affirming this point, and that in order to have kept it in line with his general charge, he should have told the jury that if they found that during the period of high prices the plaintiff had received his fair proportion of cars, such period should be excluded in estimating the fair average selling price. But practically no harm resulted, for the small amount of the verdict rendered by the jury as single damages, shows that they adopted the recommendation of the trial judge in his general charge, of which appellant cannot complain. The inconsistency shown by the court in unqualifiedly affirming this point, did not therefore result in any injury to defendant, and the mistake did not amount to reversible error. If as a fact the plaintiff was unduly discriminated against, he was entitled to be made whole for the damage he suffered thereby. No precise mathematical rule could be laid down in such a case for the guidance of the jury. Out of the mass of facts laid before them, they had to gather the value of the right, of which, if they credited the testimony of the plaintiff, he had been deprived. The trial judge instructed the jury that all that plaintiff could expect from the railroad company was his fair pro rata share of the coal cars distributed to the region, according to his output, as rated. There was a dispute of fact as to the rating of the mine. Plaintiff claimed it was five cars per day; that he was told so by the train master, and that he acted upon that basis. This was denied by the train master. There was also a dispute upon the point upon which the trial judge really made the case turn, which was, as

to whether or not plaintiff ordered cars upon every working day as he claimed; and there was also a clash of testimony as to the number of cars actually delivered to him. In endeavoring to aid the jury in solving the intricate problems of fact involved, the trial judge prepared a table based upon the testimony of defendant's witness, Mr. Freeman, the train master, in which he accepted as correct, defendant's theory of the proper ratio of distribution of cars, and he directed the jury to use it in arriving at the proportionate number of cars to which plaintiff was entitled during the months covered by the claim. He said to the jury that if they were satisfied from the testimony of defendant, that no cars were ordered by plaintiff for 338 days, and that his mine rating was actually only one, two and four cars per day, instead of five cars per day, as plaintiff claimed, then the verdict should be for the defendant. Then the court narrowed the issue in another way, by telling the jury that the serious question in the case was whether plaintiff ordered cars every day, as he alleged, or whether he sent in no orders for cars upon a large number of days, as was alleged by defendant. Upon the determination of that question of fact, the trial judge, in his charge to the jury, made the case turn.

The court further instructed the jury, that if they found that fact to be as contended for by the plaintiff, "he would be entitled to recover in some amount, and you can figure that actual amount on the basis of about 3,500 tons, and at such a rate of gain or profit to him as you may find the testimony on the subject of prices warranted, remembering, however, that this testimony pretty clearly shows that he got his quota of distribution during the high priced period, and your verdict should not be based on those high prices or on any extravagant profits." In putting the matter this way, the court practically gave to the jury in binding form, his own estimate of the tonnage; but of this instruction the defendant surely has no reason to complain. The verdict shows that the jury did

accept this suggestion of 3,500 tons, about as it was given to them by the court, and that they awarded to the plaintiff a profit of about twenty cents a ton thereon, the verdict being $705.87, so that evidently the jury in using this estimate must have excluded from their verdict, all idea of the high rate of profit which, according to the testimony, might have been derived by the plaintiff during the high priced period. We think the amount of the verdict shows conclusively that the jury awarded damages only on the basis of a deficiency of cars during the low priced period.

In the fourth assignment of error counsel for appellant complain of the refusal of defendant's third point, which requested binding instructions in its favor, on the ground that the uncontradicted evidence in the case showed that plaintiff, between June 1, 1902, and June 1, 1903, when the high prices for coal prevailed, received more than his pro rata share of cars, and that the profits made by the use of these surplus cars should be credited on the loss sustained by reason of the deficiency in cars furnished plaintiff after June 1, 1903. This point was properly refused by the court, for the reason that it was not based upon evidence which was uncontradicted. It was apparently based upon the testimony of defendant's train master that between May 30, 1903, and January 5, 1905, plaintiff's rating was two cars per day, and after the latter date, it was four cars per day. In opposition to this, plaintiff testifies that his mine was rated at five cars per day, and that he continually gave orders for cars upon that rating, and made up his claim on that basis. The trial judge did not, however, accept plaintiff's contention in this respect, as a basis for the portion of his charge dealing with that feature of the case, but made up a calculation of his own, which he submitted to the jury. In refusing the third point he said to the jury: "It would be asking the court to give binding instructions to the effect that the verdict must be for the defendant, because during a period of high prices it would appear by pretty plain

evidence, at least, that he got more than his pro rata share would entitle him to. We leave that whole question to the jury, as to whether or not, if orders were given for cars during the entire period, and he would therefore be entitled, say to 760 cars, according to my calculations, and did not get that many, you should find that he was discriminated against."

In their second assignment, counsel for appellant allege error in the affirmance of plaintiff's sixth point for charge by which the jury were instructed that if they found there was undue or unreasonable discrimination, they might treble the damages under the second section of the act of June 4, 1883. Counsel for appellant contend that this provision of the act of 1883 has been repealed, not directly, but impliedly, by the two Acts of assembly passed on May 31, 1907, P. L. 352, and P. L. 354. The Act of June 4, 1883, P. L. 72, is entitled, "An Act to enforce the provisions of the seventeenth article of the Constitution relative to railroads and canals." The sections intended to be enforced are the third and the seventh, forbidding discrimination by railroads between shippers, in rates charged and facilities for transportation afforded, including the furnishing of cars. The first section of the act repeats the prohibition against discrimination which is forbidden in the constitution. The second section gives to any person, company or corporation discriminated against, a right of action to recover treble the amount of the injury suffered. The Act of May 31, 1907, P. L. 352, is entitled, "An Act to carry into effect the provisions of section seven, article seventeen, of the Constitution of Pennsylvania, relating to discriminations and preferences in charges and facilities; and making the violation thereof a misdemeanor, and providing a penalty for the same." The Act passed the same day, P. L. 354, is entitled, "An Act carrying into effect the provisions of section three, article seventeen, of the Constitution of Pennsylvania, relating to the transportation of persons and property; and making the violation thereof a misdemeanor, and providing a penalty for

the same." Each act by its first section forbids the discrimination prohibited by the constitution, and by its second section provides that "Any violation, or attempted violation, of this act may be attacked or restrained by appropriate proceeding, either at law or in equity, at the instance of the Commonwealth, through the Attorney General;" and also provides that it shall constitute a misdemeanor punishable by fine, imposed on the corporation and on the officers, directors and employees participating in the violation. Neither act contains any provision analogous to the second section of the act of 1883, which gives a remedy to the parties injured, and fixes the damages which they may recover.

It is not contended that there is any express repeal of the second section of the act of 1883; but it is suggested that the acts of 1907 deal with the same subject-matter, and that therefore it is to be implied that the legislature intended that the later acts should supersede the former one. "Repeals by implication are not favored, and will not be indulged unless it is manifest that the legislature so intended:" 26 Am. & Eng. Ency. of Law (2d ed.), 721. Chief Justice STERRETT said, in Com. v. De Camp, 177 Pa. 112, "It is well settled that the leaning of all courts is strongly against repealing the positive provisions of a former statute by construction. There must be such a manifest and total repugnance that the two enactments cannot both stand. It is not enough that there is a discrepancy between different parts of a system of legislation on the same general subject; there must be a conflict between different acts on the same specific subject. An earlier statute is repealed only in those particulars wherein it is clearly inconsistent and irreconcilable with the later enactment. Illustrations of these familiar principles may be found in many of our cases, among the more recent of which are, Hendrix's Account, 146 Pa. 285; Com. v. Wilkes-Barre, etc., Railway Co., 162 Pa. 614; Danville State Hospital v. Overseers, 163 Pa. 175; West Chester Alley, 160 Pa. 89; Safe Deposit, etc., Co. v. Fricke, 152

Pa. 231; Hanover Borough's Appeal, 150 Pa. 202; Sifred v. Com., 104 Pa. 179."

We see no repugnance between the act of 1883 and the two acts of 1907 in question; nor is there any inconsistency between them. There is no reason why they may not all stand together. The purposes of the statutes are not the same. The former act provides a remedy for the party injured by the discrimination, and affords redress to the individual. The later acts provide for restraint of violation of the statutes at the instance of the commonwealth, through the attorney-general, and regard the violation of the statute and of the constitutional provision as a breach of public duty, and impose penalties, on public grounds. We think it a natural inference that the legislature intended the later acts to be ancillary to the other statute and in aid of its general purpose, as well as that of the constitutional provisions concerned.

The assignments of error are overruled, and the judgment is affirmed.

STEWART, J., dissents.