## Coleman, Admrx., *v.* Reading Company, Appellant.

Argued November 24, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Henry R. Heebner,* with him *Wm. Clarke Mason,* for appellant.

*John M. Smith, Jr.,* with him *Robert C. Duffy,* for appellee.

OPINION BY MR. JUSTICE MAXEY,* January 4, 1943:
This is an appeal from a judgment in favor of the plaintiff in an action in trespass under the Federal Employer's Liability Act. The action was to recover damages for the death of plaintiff's husband for the benefit of herself and her six children, whose ages ranged from three years to fifteen years. The facts are these: Robert E. Coleman, the plaintiff's husband, was employed for fifteen years as a waiter in a railroad dining car by the appellant company, and on April 4, 1940, he was thus employed in a car which left Philadelphia and arrived at Allentown about 7:35 P. M. While thus employed the decedent and the defendant company were admittedly engaged in interstate commerce.

About 8 P. M. of that day he and Allen Evans, a cook also employed by the Reading Company, having

---

* Mr. Justice MAXEY became Chief Justice on January 4, 1943, after this opinion was filed.

completed their work for the day, left the dining car which was switched to a siding track on the side of the railroad station and adjacent to the station platform, to go to their boarding house located at Union Street, Allentown, where dining car employees were lodged at appellant's expense. To get to this boarding house the two men walked on a strip of "macadam" along the siding track where the dining car was parked, in the direction of Union Street; for a distance of 125 feet they crossed some intersecting tracks and came to the point where they crossed the east bound and west bound main tracks of the Reading Company and they continued eastward along the edge of the ties toward the Lehigh Valley Tracks and Union Street. It was a dark night and there were no lights in the vicinity other than the railroad signal lights. Coleman was walking a few steps ahead of Evans toward Union Street, then about 75 feet away, when both were struck by the tender of a locomotive which was backing up and moving rapidly east on the west bound track, without lights and without sounding a warning bell or whistle. Evans was only slightly injured. Coleman died from his injuries within a short time.

The jury returned a verdict for the plaintiff of $21,881.00. The defendant moved for judgment n. o. v. and a new trial. The former motion was denied. The court adjudged the verdict excessive and reduced it to $15,000, with an order that if plaintiff filed a remittitur of all the verdict in excess of $15,000 the motion for the new trial would be refused, otherwise the motion was to be allowed. The plaintiff filed the remittitur, and upon the entry of judgment for this sum, this appeal followed. The errors assigned were to the affirmance by the trial judge of eight requests for charge requested by the plaintiff and to the court's refusal of defendant's request for binding instructions and its motion for judgment n. o. v.

The appellant's argument is divided into two parts. The first part is directed to the three assignments of

error relating to its request for binding instructions and for judgment n. o. v. and its motion for a new trial; the second part relates to alleged errors in the affirmance by the trial judge of the plaintiff's requests for charge.

Under the first part the appellant contends (a) that the plaintiff's decedent was not at the time of the accident employed in interstate commerce entitling him to protection under the Federal Employer's Liability Act. This is based upon the contention that the employee made use of an unnecessary and dangerous route over his employer's property in order to reach his destination when there was a safe, though less direct, route which he might have taken. It contends therefore that "accordingly from the time these two men left the dining car and moved eastward along the railroad track, they ceased to be engaged in interstate commerce so as to bring them within the protection of the Employer's Liability Act and that their status at the time of the accident was that of a volunteer if not a trespasser, and as such the Railroad Company owed no duty to warn them unless they were known to be in a position of danger." It is admitted by the appellant that when an employee has finished his work on his employer's premises, his status as an employee in that type of work which he has just ceased performing does not change until he has been given an opportunity to leave the premises, and if it is necessary for him to pass over other portions of the employer's property in order to reach his habitation, his status as such employee continues until he leaves the employer's premises. *Easter v. Virginian R. R. Co.,* 76 W. V. 383; *Erie R. R. v. Winfield,* 244 U. S. 170; 37 S. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918 B 662.

The appellant showed that there was in existence a safe but more lengthy route to Coleman's lodging house selected for him by defendant, but it did not show that this was "provided for the safety of its employees on leaving their work" or that it was brought home to Coleman's knowledge by the railroad company or any other person. This fact distinguishes this case from the

case of *Krysiak v. Pennsylvania Railroad Co.* in 270 Fed. 758, upon which appellant relies. In that case the defendant had provided for the safety of its employees on leaving their work, a near-by stairway which led from the tracks near where the decedent's work had been performed to a street. In the instant case the evidence is that Coleman made only two trips to Allentown and on both occasions he accompanied Evans, who had used this same fatal route to reach the boarding house where dining car employees were lodged at the defendant's expense. Evans testified that within a period of a year he had made twenty-four trips on this run and that except for two occasions when he went shopping in Allentown he used this route at the end of his day's work. From this testimony the jury could properly find that since no specific exit had been provided or suggested by the defendant that Coleman was entitled to use the only route he knew and one that was generally used by the dining car employees.

The court below stated "there was no testimony that Coleman knew of any alternative route", and the record below supports this statement. The jury could properly conclude that the plaintiff's status as an employee in that type of work which he had just ceased performing did not change until he had left the employer's premises and that it was reasonably necessary for him to pass over the tracks on which he was injured in order to reach his habitation and that he was not a trespasser.

The appellant further contends (b) that the plaintiff failed to meet the burden of proving negligence on the part of the defendant. This is based also upon the appellant's view that under the testimony in the case it was not shown that the locomotive was operated at an excessive rate of speed or that no light was on the front of the train, or that the engineer failed to give warning by whistle or bell of the locomotive's approach. The testimony in behalf of the plaintiff shows that this engine was being backed eastward on the westbound track without lights on the tender, that when it struck

the two men, although the engineer knew he had struck some one because he saw a lighted cigarette flying in the air, the engine was not stopped for approximately 100 feet. This supports an inference of a negligent rate of speed under these circumstances.

The court below properly concluded that "having determined that the instant case comes under the provisions of the Federal Employer's Liability Act, plaintiff's decedent was not a trespasser and the alleged negligence of the defendant in moving its locomotive eastward on the westbound track together with the testimony of other negligence on the part of the defendant and that 'contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee', were altogether matters for the jury to consider. See *Southern Railway Co. v. McGuin,* 240 Fed. 649."

The assignments of error Nos. 9, 10, and 11 are therefore dismissed.

The other assignments of error pressed by the appellant are Nos. 1, 2, 3, 4, 5, 6, 7 and 8. They all relate to the affirmance of requests presented by counsel for the plaintiff, and are treated in the second part of appellant's argument. The Railroad Company contends first, that it was error to affirm requests for charge to the jury on the theory that the route taken by the decedent was the usual and customary route taken by employees in the absence of an averment and proof of such custom; and secondly, that it was error to affirm requests for charge to the jury relating to defendant's duty to the decedent, the risks assumed by decedent and the effect of the Company's rules and regulations with respect thereto. Nothing can be gained by discussing each of these requests for charge the affirmance of which are assigned as error, but we point out that in the appellant's History of the Case, it is asserted that "the learned trial judge submitted the case to the jury following a charge to the main portion of which no exceptions were taken on behalf of the defendant". The

only exceptions taken by the defendant is to the affirmance of plaintiff's requests for charge. We have read the general charge to the jury. It was substantially correct and adequate. We cannot concede that there was error in the affirmance of the plaintiff's requests. The argument advanced by the appellant is that they admit of implication and constructions not in accordance with law. We find in these requests so affirmed nothing prejudicial to this defendant. The mistake of a trial judge in unqualifiedly affirming a request which is not consistent with a correct general charge does not necessarily amount to reversible error: *Jackson v. Pennsylvania R. R. Co.,* 228 Pa. 566, 77 A. 905; *Otis v. Pittsburgh Westmoreland Coal Co.,* 220 F. 595, 136 C. C. A. 53, certiorari denied 35 S. Ct. 941, 238 U. S. 639, 59 L. Ed. 1501, nor will a judgment be reversed because of an answer to a request which admits of a construction not in accordance with law, where there is no reason to believe that the jury was misled thereby, the matter having been fully explained to them. The answer must be read in connection with the general charge: *Schaeffer v. Sensenig,* 182 Pa. 634, 641, 38 A. 473; *Jackson v. Penna. R. R. Co.,* supra. The several assignments of error covering the affirmance by the court to plaintiff's requests are dismissed.

There is only one other contention made by the appellant which needs to be here considered. The appellant argues that the verdict is excessive and the court should either further reduce it or order a new trial. The evidence shows that the decedent was thirty-seven years old at the time of his death; he had a life expectancy of over thirty years; he earned $135.00 per month; he gave all his earnings except $2.00 or $3.00 per week to his wife for the support of his family of six minor children; he was in good health and apparently was a provident husband and father. The funeral bill was modest and was for $444.50. The court properly charged the jury on the measure of damages. A recovery of $15,000 was justified.

The order is affirmed.