466 A.2d 174

**Elizabeth D. DONLIN and Leo A. Donlin, her husband**

v.

**J.J. NEWBERRY COMPANY and McCrory Corporation, Appellants.**

Superior Court of Pennsylvania.

Argued April 13, 1983.

Filed Sept. 23, 1983.

Richard A. Gray, Williamsport, for appellants.

David B. Keeffe, Sayre, for appellees.

Before HESTER, CAVANAUGH and POPOVICH, JJ.

HESTER, Judge:

On May 14, 1977, appellee, Elizabeth D. Donlin, was a customer in the J.J. Newberry Store, situate at Desmond Street, in the City of Sayre, Bradford County, Pennsylvania. J.J. Newberry Co. is a division of McCrory Corp. J.J. Newberry Co. and McCrory Corp. were defendants below and are appellants herein.

Mrs. Donlin entered the store at 4:45 p.m. through the southern doorway from Desmond Street. She browsed for approximately one-half hour and eventually purchased white socks, coloring books and a package of crayons. It was closing time while Mrs. Donlin was inside the store, and doors were being locked and lights turned off. Having made her purchases, Mrs. Donlin was instructed to leave through the northern exit onto Desmond Street.

Upon leaving, Mrs. Donlin walked through an interior doorway, across a vestibule, and through a second doorway to the outside. She took two steps beyond the exterior doorway and was not yet clear of the open door when her right foot was snagged by a metal strip protruding from the concrete sidewalk. The concrete was crumbling; in fact, Mrs. Donlin detected its deteriorating condition as she walked into the vestibule.

The metal strip obstructed Mrs. Donlin's gait and forced her to fall to the pavement. With the aid of Newberry's assistant manager, she managed to get to her car and drive home alone. X-rays revealed a fracture of the right ankle-bone. Mrs. Donlin also sustained bruises over the posterior portion of her right hip, recurring pain in her right hip, buttocks and pelvis and an aggravation of a pre-existing lower-back ailment. These injuries prevented Mrs. Donlin from returning to work as a seamstress for the Darling Dress Factory in Waverly, New York, until July 11, 1979.

As a result of these injuries, Mrs. Donlin filed a Complaint in Trespass against appellants in the Court of Common Pleas of Bradford County, Pennsylvania. She demanded damages in excess of $10,000.00 as compensation for pain and suffering, lost earnings and disability. Mrs. Donlin's husband, Leo A. Donlin, joined as a complainant seeking compensation for medical expenses and loss of consortium. He joins Mrs. Donlin as appellee before this Court.

Following a trial by jury, a verdict of $500.00 was awarded to Mr. Donlin and a verdict of $41,770.00 was awarded to Mrs. Donlin. Appellants' motion for new trial and judgment non obstante verdicto was denied by an Order of Court, dated September 19, 1980. A Notice of Appeal from the September 19th Order was timely filed; nevertheless, it was quashed by the Superior Court. Judgment on the verdict was then entered by the trial court by an Order of Court, dated March 15, 1982. Appellants filed this appeal from the March 15th Order.

■■■■ It is appellants' first contention that Mrs. Donlin was contributorily negligent as a matter of law due to her knowledge of the crumbling sidewalk and her failure to look down as she proceeded through the exterior set of double doors. According to appellants:

.... persons have an ever-present duty to look where they are going, and they must avoid an obvious danger by the use of the means at hand, and if one can reasonably assure her safety by the use of her senses, she must do so, or abide the consequences of her carelessness. Brief of appellants, p. 11.

Appellants cite three opinions in support of this contention. Unlike the facts in those opinions, the facts here disclose that, although Mrs. Donlin observed the deteriorating condition of the sidewalk, she did not notice the defect which actually caused the injuries. She was unaware of the metal band since it comprised a negligible portion of the entire sidewalk. The crumbling concrete, unlike the band, was a significantly larger mass rendering it readily detectable. Also, the lower section of the exterior doors, when closed, and as Mrs. Donlin proceeded through the vestibule, concealed the metal band. Moreover, the band was no more than three feet from the exterior doors; consequently, there was no appreciable opportunity to detect the danger upon stepping outside. In fact, the band was so close to the exterior doors that Mrs. Donlin fell while one door remained open. Her half-prone body prevented the door from closing until she pushed herself along the concrete. Finally, Mrs. Donlin had no alternative but to exit through the northern doors on Desmond Street. Since it was closing time, patrons were instructed to leave through that doorway only; therefore, she was compelled to use a treacherous route to her vehicle. In light of these facts, we will not reverse the jury's finding that Mrs. Donlin did not voluntarily expose herself to a known risk. Contributory negligence can be found as a matter of law in clear cases only. *Argo v. Goodstein*, 438 Pa. 468, 265 A.2d 783 (1970); *Davis v. Feinstein*, 370 Pa. 449, 88 A.2d 695 (1952). Only where it is

beyond dispute that a dangerous condition is so apparent that an ordinarily prudent person would regard it as a hazard and attempt to avert it, can we say as a matter of law that a person exposing himself to such risk is contributorily negligent. See *McNally v. Liebowitz*, 498 Pa. 163, 445 A.2d 716 (1982). Sufficient evidence of Mrs. Donlin's involuntary exposure to a latent defect precludes a finding of contributory negligence as a matter of law.

■ Although we agree with appellants' averment that pedestrians "must look where they are going," *Villano v. Security Savings Association*, 268 Pa.Super. 67, 407 A.2d 440 (1979); *Lewis v. Duquesne Inclined Plane Co.*, 346 Pa. 43, 28 A.2d 925 (1942), we will not hold them responsible for walking so tentatively as to detect nearly-latent defects. Such action exceeds the burden placed upon the ordinarily prudent man under these circumstances. *DeGregoris v. Stockwell Rubber Co. Inc.*, 235 Pa.Super. 71, 340 A.2d 570 (1975).

Next, appellants argue that the trial court erred in charging the jury on lost future earnings and loss of earning capacity. Mrs. Donlin made the following allegations in her Complaint with respect to damages:

7. As a result of the aforementioned negligence on Defendant's part, the Plaintiff, Elizabeth D. Donlin, was rendered sick, sore, lame and disabled and experienced pain and suffering, which is permanent and still exists.

8. As a result of the injuries sustained by the Plaintiff, she was unable to work at Darling Dress Factory, 306 Broad Street, Waverly, New York, for the period from May 16, 1977 until July 12, 1977, where she earned $92.00 gross per week, for a total loss of wages of $736.00, a copy of said lost earnings attached hereto as Exhibit A.

Lost future earnings and loss of earning capacity were not set forth in the pleadings; therefore, according to appellants, it was improper to submit them for determination to the jury. Appellants cite *Heymann v. Electric Service*

*Manufacturing Co.*, 412 Pa. 338, 194 A.2d 429 (1963), wherein it was acknowledged that jury instructions must be curtailed to include only those issues raised in the pleadings, and, in the event issues not pleaded are elicited for the first time during trial without objection, it is still error to instruct the jury on its obligation to determine such issues.

■ Although we believe that the better practice is to specifically plead damages for loss of earning power and loss of future earnings, such damages are nevertheless general damages which may be sent to the jury under a general prayer for relief. *Labradie v. Cilurso*, 28 Monroe Leg.Rep. 220 (1973); *Leonard v. Baltimore & O.R. Co.*, 259 Pa. 51, 102 A. 279 (1917). Consequently, such damages were properly plead by Mrs. Donlin, and *Heymann* is inapposite. Appellants were not without the means to discover, prior to trial, the precise damages for which appellees sought to be compensated. For example, under Pa.R.C.P. 4010, appellants could request that the court order Mrs. Donlin to submit to a physical examination by a physician of appellants' choice; under Pa.R.C.P. 4009, appellants could seek inspection of the medical records compiled by Mrs. Donlin's attending and treating physician; and, under Pa.R.C.P. 4004, 4005 and 4007.1, appellants could depose Mrs. Donlin on her loss of future earnings and earning power. Indeed, such damages are readily discoverable. See *Ruddy v. Pennsylvania Gas & Water Co.*, 36 Pa.D & C 2d 705 (1965); *Bell Tel. Co. v. Swartz*, 19 Monroe L.R. 19, 52 Schul.Leg.Rec. 168 (1957).

■ With respect to the alleged error in charging the jury on lost future earnings and loss of earning capacity, appellants maintain that the trial court's example for the jury of complete disability for 20 years and lost earnings of $10,-000.00 per year unduly emphasized the element of damages for future lost earnings. The court's precise instruction was as follows:

Let me illustrate these instructions with a hypothetical example, *which is not intended to be related to the facts of the case. Assume* that you find the plaintiff will be

disabled for a total of 20 years and *assume* further that you find her average loss of earning power for each of those 20 years would have been $10,000.00. Opposite the 20 years you will find the number 12.8722. 10,000.00 times 12.8722 is $128,722.00 which would be total loss of future earning power in this hypothetical case reduced to present worth. Listen to this, as with the figures on life expectancy. *These present worth figures are offered to you only as a guide. You are not bound to accept these figures, any more than you are bound to accept the figures of [an] actuary testifying from the witness stand. These figures are offered only for your assistance.* Well, when it gets to that example, it is a little easier to understand. If you were to find that a particular plaintiff were to, would normally make $10,000.00 a year for 20 years, then you'd say, "10 times 20 years; my gosh, he lost $200,000.00." But this means that $200,-000.00 must be reduced to present worth, because they are not going to get that $10,000.00 a year for the next 20 years, they are going to get the whole bundle amount. So, they got a table here that you use. What it all means is $10,000.00 every year for the next 20 years would be $200,000.00. You get the same amount of money as the example said; you get $128,722.00 right today. That's the same as $10,000.00 every year for 20 years. That's what that's all about and we will give you the tables so, if you find there's a basis for awarding future loss of earnings and lost earning capacity, that's the way you do it and you take the table with you so that you can do it. (Emphasis added).

Having determined that the court properly submitted the issue of lost future earnings and loss of earning capacity to the jury, and in recognition of the court's cautionary instruction that its illustration was purely hypothetical, we fail to detect an over-emphasis of these damages. Furthermore, despite appellants' assertion that Mrs. Donlin quit working in March, 1979 at her husband's insistence that she retire, the record is replete with evidence that she resigned

her position as a seamstress due to severe discomfort in her lower back. There was sufficient evidence of her loss of earning capacity and future wages; these damages were properly submitted to the jury and the instruction did not emphasize such damages to appellants' detriment.

When determining the sufficiency of instructions to the jury, the charge must be reviewed in its entirety, *Mount v. Bulifant*, 438 Pa. 265, 265 A.2d 627 (1970), so that it can be determined whether the court fairly considered the evidence of both parties. *Sears v. Birbeck*, 321 Pa. 375, 184 A. 6 (1936). Appellants contend that the trial judge unfairly denied their point for charge that a store owner is not an insurer of its patrons' safety. We agree that a store owner need not insure its patrons' freedom from harm; however, we find no error in the trial judge's refusal to so instruct the jury. Viewing the entire charge here in light of the maxim that instructions will not be the basis of reversible error where they do not mislead the jury into considering inapplicable or erroneous law, *Hajduk v. Fague*, 200 Pa.Super. 55, 186 A.2d 869 (1962); *Coleman v. Reading Company*, 346 Pa. 289, 29 A.2d 499 (1943), it was clear below that a store owner is not obligated to guarantee safety. The following excerpts from the charge illustrate this holding: "... an owner ... of land is required to use reasonable care in the maintenance and use of the property"; "[one] in possession of land is required to maintain the abutting public sidewalk in a reasonably safe condition to prevent or eliminate any hazard or unsafe condition, which upon all the circumstances involved could constitute an unreasonable risk of harm to pedestrians properly using walks." These portions of the instructions speak of "reasonable", not "guaranteed" care. Moreover, the instructions included an extensive explanation of contributory negligence and a person's obligation to avoid certain dangerous conditions created by another.

Finally, appellants maintain that the total award of $42,270.00 was excessive. Appellants are particularly disturbed by the amount of the award in light of the $1,165.00

in special damages. Our scope of review with respect to an alleged excessive jury verdict is extremely limited. Unless the verdict "is so grossly excessive that it shocks our sense of justice", *Simmons v. Mullen*, 231 Pa.Super. 199, 214, 331 A.2d 892, 901 (1975), we will not interfere with the jury's determination. Out-of-pocket expenses do not solely determine the final award. *Murphy v. Taylor*, 440 Pa. 186, 269 A.2d 486 (1970); *Simmons*, supra. They are examined with all aspects of the case.

In addition to out-of-pocket expenses, there was evidence of Mrs. Donlin's constant discomfort in her lower back, buttocks, pelvis, and right leg and ankle. The pain was so acute and enduring as to force her to retire at least four years before normal retirement age. Expert testimony revealed that, although her lower back pain would subside from time to time, it was likely to subsist for the remainder of her life. Under these facts, we are not inclined to find the verdict excessive.

Order affirmed.

CAVANAUGH, J. concurred in the result.