J-A30029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CYNTHIA & DAVID FRISTIC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MAPLE LAWN ASSOCIATES, INC. | : | No. 858 MDA 2019 |

Appeal from the Order Entered May 15, 2019
In the Court of Common Pleas of Juniata County Civil Division at No(s):
282-2014

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED AUGUST 14, 2020**

Appellants Cynthia and David Fristic appeal from the trial court's order granting summary judgment in favor of Appellee, Maple Lawn Associates (Maple Lawn), and against Appellants in their slip-and-fall negligence action. Appellants argue that the trial court erred in granting summary judgment based on its ruling that the subject defect alleged to have caused Appellant Cynthia Fristic's (Mrs. Fristic) fall was trivial or open and obvious. For the following reasons, we reverse and remand for further proceedings.

On September 25, 2012, Mrs. Fristic and her co-worker Jeremy Pierson (Pierson) attended their company's tour of Maple Lawn's facility. At the end of the tour, Mrs. Fristic fell while she and Pierson were walking back to Mrs. Fristic's car in Maple Lawn's parking lot. As a result of her fall, Mrs. Fristic

_____

[*] Retired Senior Judge assigned to the Superior Court.

suffered foot injuries requiring multiple surgeries and physical therapy. Appellants, who are wife and husband, filed a complaint against Maple Lawn and other defendants on September 11, 2014.[1] Maple Lawn responded with an answer with new matter on June 12, 2015.

During discovery, Maple Lawn's counsel deposed Mrs. Fristic and Pierson, and Mrs. Fristic's counsel deposed Steven Ehrenzeller (Ehrenzeller), president of Maple Lawn. Mrs. Fristic testified that on the day of her fall, she and Pierson arrived at Maple Lawn at around 8:00 a.m., and that she parked in Maple Lawn's parking lot. Fristic Dep., 6/29/15, at 23. The two then walked from Mrs. Fristic's car, straight across the parking lot, and into Maple Lawn's main building where they met a group of their colleagues for a tour of the facility. *Id.* at 24.

Around 1:00 p.m., Mrs. Fristic testified that she and Pierson began walking back to her car. *Id.* at 27. Because the parking lot was more crowded at that time, she and Pierson walked around the outside edge of the parking lot near a white fence. *Id.* at 28. According to Mrs. Fristic, she "just fell." *Id.* at 27. When asked what caused the fall, she testified, "my foot lost balance and I fell in a -- there was a hole, I guess." *Id.* at 30. She was not able to describe the dimensions of the hole but stated that the hole was "[b]ig enough for my foot to go in it." *Id.* at 31.

---

[1] Appellants sued multiple entities and individuals related to Maple Lawn alleging negligence for personal injuries, loss of consortium, and related claims. Appellants stipulated to the withdrawal of their claims against all other defendants except Appellee, Maple Lawn. N.T., 4/15/19, at 2.

During her deposition, Maple Lawn's counsel presented Mrs. Fristic with several photographs of the parking lot, some of which counsel described as showing a "repaired hole." *Id.* at 44. The patched area in the photographs measured approximately fourteen-and-a-half inches in diameter. *Id.* at 52. Mrs. Fristic was uncertain if the pictures depicted the hole that caused her to fall but asserted that they showed the path and area where she was walking. *Id.* at 45.

Pierson, Mrs. Fristic's co-worker, testified that they were walking along the outer edge of the parking lot when Mrs. Fristic fell. Pierson Dep., 3/21/16, at 9. Pierson did not see any problems on the ground as they were walking, but after Mrs. Fristic fell he observed "an indentation in the pavement." *Id.* at 11-12. He described it as "a small indentation, maybe six to eight inches in diameter, just a couple inches deep, almost like the pavement had settled a little bit in that spot." *Id.* at 11. When asked if it resembled a "dinner plate or a bowl," Pierson responded, "I would say a bowl." *Id.* at 12.

During the depositions of Mrs. Fristic and Pierson, Maple Lawn's counsel elicited testimony that the weather was clear on the afternoon of the fall. Moreover, they both testified that there was no trash or debris that obstructed their view of the "hole" or bowl-shaped indentation.

Ehrenzeller, Maple Lawn's president, testified that he invited Mrs. Fristic's group to tour the facility. Ehrenzeller Dep., 7/27/15, at 11. He noted that the parking lot holds approximately twenty-five cars, it is the only parking lot at the facility, and he also parks there. *Id.* at 12. Ehrenzeller

acknowledged that he saw a hole along the eastern side of the lot and that there was a second larger hole a few feet away. *Id.* at 17. He stated that he saw the holes "every day" but did not have them repaired because "[t]hey didn't seem to be of size to be a hazard." *Id.* Ehrenzeller further testified that no cones or signs were used to alert invitees of the presence of holes in the parking lot. *Id.* at 26. Following Mrs. Fristic's fall, Maple Lawn's safety committee met and discussed the holes which Ehrenzeller subsequently repaired.[2] *Id.* at 17-18. The safety committee's meeting minutes addressed Mrs. Fristic's fall as well as the holes in the parking lot and noted that "We are also trying to determine why it [the parking lot pavement] keeps sinking/settling." *Id.* at 19. Ehrenzeller confirmed that holes in the parking lot existed prior to Mrs. Fristic's fall. *Id.*

On January 11, 2019, Maple Lawn filed the instant motion for summary judgment on all claims against Maple Lawn and all other defendants

---

[2] We note that Pennsylvania Rule of Evidence 407 recognizes:

> When measures are taken by a party that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible against that party to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction.

> But the court may admit this evidence for another purpose such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

Pa.R.E. 407 (formatting altered).

contending that they were not liable for Mrs. Fristic's fall because the alleged condition in the parking lot was a trivial defect for which they owed no duty to protect. Alternatively, Maple Lawn asserted that the condition was open and obvious. Appellants filed an answer to Maple Lawn's motion for summary judgment.[3] On May 15, 2019, the trial court granted Maple Lawn's motion and filed an opinion in support of its order. Appellants filed a timely notice of appeal on May 28, 2019, and a timely Pa.R.A.P. 1925(b) statement on May 31, 2019.

In its Rule 1925(a) opinion, the trial court explained that it found the defect to be "trivial" or "open and obvious." Trial Ct. Op., 5/15/19, at 4-5. On the one hand, the trial court "acknowledge[d] the presence of a slight circular depression measuring approximately fourteen inches wide." *Id.* at 4. The trial court noted the testimony of Mrs. Fristic and Pierson and found that "the defect in question [was] not patently dangerous, and not so large as to appear dangerous to the ordinary pedestrian." *Id.* (citation omitted).

Additionally, the trial court found that, "[i]t is also clear from these pictures, and the testimony provided, that the defect in question was open and obvious . . . and that [Maple Lawn was] under no obligation to warn [Mrs. Fristic] about the defect because it was so obvious to [her] that [she] may be expected to discover [it]." *Id.* Noting that "the weather was clear that day

---

[3] As necessary, we discuss and distinguish cases cited by the parties concerning the triviality and obviousness of the alleged defective condition purported to have caused Mrs. Fristic's fall.

with no debris blocking their view," the trial court concluded that Maple Lawn was "under no obligation to warn [Mrs. Fristic] about the defect and that "[Maple Lawn's] failure to cure the defect in question is clearly nonfeasance." *Id.* at 5. (some formatting altered). Lastly, the trial court explained that there is no genuine issue of a material fact regarding the other Defendants' involvement in Mrs. Fristic's fall because Maple Lawn "is the sole entity responsible for the parking lot in question." *Id.* at 5.

Appellants raise four questions on appeal.

[1]. Did the trial court commit an error of law and/or abuse its discretion when the trial court improperly applied the standard for summary judgment?

[2]. Did the trial court commit an error of law and/or abuse its discretion when the trial court granted summary judgment based on the issue of a trivial defect by finding that a fourteen inch, bowl-shaped hole was a trivial defect despite case law that leaves that determination to the jury?

[3]. Did the trial court commit an error of law and/or abuse its discretion then the trial court granted summary judgment based on the principle that the defect that caused [Mrs. Fristic's] fall was open and obvious, while at the same time holding that "the defect is clearly not so large and unusual as to appear dangerous to the ordinary person"?

[4]. Did the trial court commit an error of law and/or abuse its discretion when the trial court addressed an argument that had already been removed from the action by a stipulation of parties prior to oral argument?

Appellants' Brief at 6 (formatting altered).

The standards governing the appellate review of an order granting summary judgment are well established. "Summary judgment is appropriate

only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Brewington v. City of Phila.***, 199 A.3d 348, 352 (Pa. 2019) (citation omitted); ***see*** Pa.R.C.P. 1035.2(1).

> Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. Our scope of review is plenary. In reviewing a trial court's grant of summary judgment, we apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

***Wright v. Misty Mountain Farm, LLC***, 125 A.3d 814, 818 (Pa. Super. 2015) (citations omitted).

To establish a claim of negligence, a plaintiff must show that (1) the defendant had a duty to act in conformity with a standard of conduct, (2) the defendant breached that duty, (3) the plaintiff suffered harm, and (4) that breach was the cause of the plaintiff's harm. ***Krentz v. Consol. Rail Corp.***, 910 A.2d 20, 27 (Pa. 2006). In cases of premises liability, "[t]he standard of care a possessor of land owes to one who enter upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." ***Carrender v. Fitterer***, 469 A.2d 120, 123 (Pa. 1983) (citation omitted). In the instant

case, Mrs. Fristic was a business invitee on Maple Lawn's property in that she was on a company tour of the Maple Lawn facility at the invitation of Ehrenzeller.  **See** Ehrenzeller Dep. at 11.

This Court has maintained that "the duty owed to a business invitee is the highest owed to any entrant upon land."  ***Reinoso v. Heritage Warminster SPE LLC***, 108 A.3d 80, 85 (Pa. Super. 2015) (*en banc*) (citation omitted).  Our Supreme Court in ***Carrender*** explained the duty owed an invitee.

> Possessors of land owe a duty to protect invitees from foreseeable harm.  With respect to conditions on the land which are known to or discoverable by the possessor, the possessor is subject to liability only if he,
>
>> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and
>>
>> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>>
>> (c) fails to exercise reasonable care to protect them against the danger.
>
> Thus, as is made clear by section 343A of the Restatement,
>
>> a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

***Carrender***, 469 A.2d at 123 (citations omitted and formatting altered).

The comments to section 343 of the Restatement further state that

> an invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises

and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein. Therefore, an invitee is not required to be on alert to discover defects which, if he were a mere licensee, . . . he might be negligent in not discovering. This [expectation] is of importance in determining whether the visitor is or is not guilty of contributory negligence in failing to discover a defect, as well as in determining whether the defect is one which the possessor should believe that his visitor would not discover, and as to which, therefore, he must use reasonable care to warn the visitor.

Restatement (Second) of Torts § 343 cmt. d. (formatting altered).

First, Appellants argue that the trial court "invaded the province of the jury" by making factual determinations as to whether the defect was trivial or open and obvious. Appellants' Brief 15. Further, Appellants contend in their second issue that the trial court's characterization of the defect as "slight" is a factual determination for a jury to decide. *Id.* Appellants assert that the trial court erred in concluding that "the subject fourteen-inch, bowl-shaped hole is [a *de minimis*] defect." *Id.* at 24. Appellants maintain that the question of whether a defect is sufficient to impose liability on a property owner should be resolved by a jury. *Id.* at 21 (citation omitted).

In response, Maple Lawn argues that the trial court properly applied the summary judgment standard. Maple Lawn's Brief at 8. Maple Lawn asserts that the trial court's characterization of the defect as "slight" is supported by the evidence. *Id.* at 12. Maple Lawn cites the testimony of Pierson that the defect was between six and eight inches wide and approximately two inches deep. *Id.* at 11. Maple Lawn contends that the only evidence showing that the defect might be larger was presented in photographs that were not

properly authenticated as fair and accurate depictions of the defect that allegedly caused Mrs. Fristic to fall. *Id.*

Maple Lawn continues that because the defect was trivial, it "owed no duty to [Mrs. Fristic] to prevent any harm that might have occurred from walking on [the] alleged defect." *Id.* at 12. Comparing the instant case to *Bosack v. Pittsburgh Rys. Co.*, 189 A.2d 877 (Pa. 1963), Maple Lawn maintains that as a matter of law, the defect is appropriately classified as trivial due to its size as described by Pierson. *Id.* at 14. Maple Lawn emphasizes that the defect was not "magnified in danger by a poorly lit or dark area" but was instead a "cracked portion of unsettled pavement." *Id.* at 21.

As to trivial defects, this Court has stated:

Although property owners have a duty to maintain their sidewalks in a safe condition, property owners are not responsible for trivial defects that exist in the sidewalk. Our courts have held that an elevation, depression, or irregularity in a sidewalk or in a street or highway may be so trivial that, as a matter of law, courts are bound to hold that there was no negligence in permitting such depression or irregularity to exist.

*Mull v. Ickes*, 994 A.2d 1137, 1140 (Pa. Super. 2010).

In *German v. City of McKeesport*, 8 A.2d 437 (Pa. Super. 1939), the plaintiff was attempting to cross the street "not at the regular crossing place" with her arms full of packages. *German*, 8 A.2d at 439. The heel of the plaintiff's shoe got caught as she stepped off the sidewalk causing her to fall. *Id.* When she looked to see what caused her fall, she found her heel print in

"the dirt or earth which had filled up even a break, imperfection or irregularity in the sidewalk." *Id.* The imperfection was fourteen to sixteen inches long, two inches wide, and "close to an inch" in depth. *Id.* The imperfection had been filled so that it was flush with the rest of the sidewalk and neither the hole nor the filling was apparent. *Id.* The municipality was the only named defendant, and this Court concluded, "it was not such a defect in the sidewalk as imposed liability on the property owner for failure to remedy or repair it." *Id.* at 440. This Court, in *German*, also reasoned that the imperfection was only two inches wide, an inch deep, and situated fifteen feet from the crosswalk. *Id.* at 441. Accordingly, following a jury verdict and judgment in favor of the plaintiff, the *German* Court reversed the judgment, reasoning that the municipality was not liable because the defect "presented no aspect of danger" whether it was filled or not. *Id.*

In *Reinoso*, this *en banc* Court reversed the trial court's grant of summary judgment in favor of the defendants, reasoning that a genuine issue of material fact existed as to whether a 5/8ths of an inch height differential between sidewalk panels constituted a trivial defect. *Reinoso*, 108 A.3d at 90. The plaintiff, a business invitee of the defendants, tripped and fell on a raised section of the sidewalk. *Id.* at 82. In opposition to the defendants' motion for summary judgment, the plaintiff presented expert testimony indicating that the height differential, which varied between 1-1/8th inches and 5/8ths of an inch at different points, exceeded the safety standards and presented a tripping hazard. *Id.* at 86. Further, the *Reinoso* Court

- 11 -

considered the deposition testimony of a co-defendant indicating that he brought the defect to the attention of the management company. *Id.* Considering these circumstances, the Court held that "whether a sidewalk defect is trivial is not simply a matter of the size or measurement of the defect when there are genuine issues of material fact based on the surrounding circumstances." *Id.* at 89-90.

We conclude that this case is more akin to *Reinoso*. Here, Maple Lawn, the parking lot owner, owed Mrs. Fristic, a business invitee, the highest duty of care. Mrs. Fristic testified that her foot was ensnared in a defect in Maple Lawn's parking lot. Based on the record, the approximate size of the defect is unclear. Mrs. Fristic stated that it was large enough for her foot to "go in it." Fristic Dep. at 31. Pierson described the defect as a bowl-shaped indentation and roughly six to eight inches in diameter and a couple inches deep. Pierson Dep. at 11. Exhibits 2 through 6, attached to Mrs. Fristic's deposition are photographs showing a filled hole measuring approximately fourteen inches wide. Fristic Dep. Ex. 2-6.

Further, even accepting the trial court's characterization of the hole as "slight" based on Mrs. Fristic and Pierson's depositions, the evidence indicates that the defect was known to Maple Lawn and subsequently repaired. Ehrenzeller testified that he knew about several holes in the parking lot and walked past them daily. Ehrenzeller Dep. at 17. Yet, no repairs were made to the parking lot until after Mrs. Fristic's fall. *Id.* Viewed in the light most

favorable to Appellants, this is undisputed evidence that Ehrenzeller had actual notice of the defective condition.

Therefore, viewing the facts in the light most favorable to Appellants as the non-movants, Appellants have identified sufficient material issues of fact in the record for a reasonable jury to decide whether the subject defect was trivial and whether Maple Lawn had sufficient notice that the defect presented an unreasonable risk of harm to invitees for which it had the duty to take feasible precautionary measures. Accordingly, we agree with Appellants that the trial court erred in determining that the defect was trivial as a matter of law and that summary judgment was improperly granted concerning this issue.

Next, Appellants argue that the trial court improperly granted summary judgment based on the principle that the defect was open and obvious. Appellants' Brief at 24. Appellants contend that "reasonable minds differ as to whether the [defect] was open and obvious" at the time of Mrs. Fristic's fall. *Id.* at 25-26. According to Appellants, "the trial court has contradicted itself" by finding that the hole was both open and obvious and "not so large and unusual as to appear dangerous to the ordinary pedestrian." *Id.* at 27.

Appellants assert that the trial court's finding that the defect was open and obvious would be contrary to prior cases and require business invitees "to walk with their gaze fixed solely on the ground in front of them in order to recover." *Id.* Appellants maintain that Mrs. Fristic should not be responsible for avoiding the danger on a property "when the president/owner of said

property had knowledge that the [defect] existed prior to [Mrs. Fristic's] fall, and testified that he saw it 'every day' and yet, did nothing to remedy it." *Id.* at 30.

Maple Lawn contends that as a matter of law, it cannot be held liable because the defect was open and obvious to Mrs. Fristic. Maple Lawn's Brief at 22. Citing the Restatement (Second) of Torts, Maple Lawn argues that a land possessor does not owe a duty to warn an invitee "against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them." *Id.* 23-24. Maple Lawn also notes that "[o]ordinary distractions from open and obvious risks of harm will not create a duty to a person being distracted when there otherwise would be none." *Id.* at 23. Accordingly, Maple Lawn maintains that despite the presence of traffic in the parking lot, Mrs. Fristic should have seen the defect and avoided it. *Id.* at 29.

Addressing the trial court's finding that the defect was both trivial and open and obvious, Maple Lawn argues that summary judgment is properly granted where the defect is found to be trivial **or** where the defect is found to be open and obvious. *Id.* at 22. Accordingly, Maple Lawn contends that the trial court properly granted the motion "on an ample record and for two legally valid grounds." *Id.* at 33.

Generally, "a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them." *Carrender*, 469 A.2d at 123 (citation omitted). However, the comments to the Restatement (Second) of Torts § 343A explains

that a possessor of land is not relieved of the duty to exercise reasonable care if the possessor can and should expect that the dangerous condition will cause harm to the invitee despite its known or obvious danger:

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. . . . In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk.

Restatement (Second) of Torts § 343A cmt. f. (citation omitted).

"A danger is deemed to be obvious when both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising normal perception, intelligence, and judgment." *Carrender*, 469 A.2d at 123-24 (citation omitted and formatting altered). For a danger to be considered "known," it must be both known to exist and recognized as dangerous. *Id.* at 124. "Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." *Id.* (citation omitted).

In *Carrender*, a patient of a chiropractic clinic slipped on a patch of ice in the clinic's parking lot and sued seeking damages. *Id.* at 121. The parking lot was free of ice and snow, except for the parking space the plaintiff selected. *Id.* Before opening her car door, the plaintiff noted the slippery ground condition outside the car. *Id.* at 121-22. Further, the plaintiff, who wore a

prosthesis was aware of the amplified risk it presented to her and chose not to move to another open parking space. *Id*. at 122. Following a jury verdict in which the defendant was found 65% negligent, and the plaintiff was found 35% negligent, the plaintiff appealed to this Court, which affirmed. *Id.* at 121. The plaintiff appealed to our Supreme Court, which concluded, as a matter of law, that the defendant clinic did not have a duty to warn the plaintiff of the ice patch because the plaintiff's "own testimony showed not only that the existence of the ice was obvious to a reasonably attentive invitee, but also that [the plaintiff] herself was aware of the ice and appreciated the risk of traversing it." *Id.* at 123-24. Therefore, our Supreme Court remanded with instructions that judgment be entered in favor of the defendant. *Id.* at 121.

In ***Donlin v. J.J. Newberry Co.***, 466 A.2d 174 (Pa. Super. 1983), the plaintiff, a store patron, caught her foot on a metal strip protruding from the sidewalk as she exited the store. ***Donlin***, 466 A.2d at 175. At closing time, the plaintiff was asked to exit through a different door than the one she entered in approximately half an hour before. *Id.* As she approached the exit, the plaintiff noticed the concrete outside the exterior door was crumbling but did not see the metal band. *Id.* at 175-76. After a jury verdict in favor of the plaintiffs, the defendant appealed, and this Court affirmed, reasoning that the plaintiff did not voluntarily expose herself to the risk:

> Although we agree with [the defendants'] averment that pedestrians "must look where they are going," we will not hold them responsible for walking so tentatively as to detect nearly-latent defects. Such action exceeds the burden placed upon the ordinarily prudent man under these circumstances.

*Id.* at 176 (citations omitted).

Instantly, based on the multiple descriptions of the parking lot holes in the record, we agree with Appellants that they have identified material issues of fact such that reasonable minds could differ as to whether or not the subject defect in Maple Lawn's parking lot was open and obvious. **See Carrender**, 469 A.2d at 124. Mrs. Fristic testified that she did not see the hole until after she fell, and that the hole was big enough for her foot to go in it. Fristic Dep. at 31. She also testified that this was her first time at Maple Lawn's place of business, and that she and Pierson walked a different route to return to her car because of the heavy traffic in the parking lot at the time of her fall. *Id.* at 28. Pierson described the hole as a small indentation about six to eight inches in diameter, and a couple of inches deep that resembled a dinner bowl. Pierson Dep. at 11.

For the foregoing reasons, we find that genuine issues of fact exist for a jury to determine whether the defect was open and obvious such that Mrs. Fristic should have observed the hole in the parking lot prior to her fall and appreciated the danger it posed. Therefore, the trial court improperly granted summary judgment on this issue. **See Carrender**, 469 A.2d at 124.

Accordingly, viewing the record in the light most favorable to Appellants, as the non-movants, and for the reasons herein, we find there are genuine issues of material fact as to whether the parking lot defect was trivial, or open

and obvious.[4]  Accordingly, we reverse the trial court's order granting summary judgment and remand for further proceedings consistent with this memorandum.

Order reversed.  Jurisdiction relinquished.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/14/2020

---

[4] Appellants assert that the trial court's decision to grant summary judgment was improperly based on oral testimony in violation of ***Nanty-Glo v. American Surety Co. of New York***, 163 A. 523 (Pa. 1932).  Appellants' Brief at 16.  Maple Lawn contends that Appellants overlook the exception to the ***Nanty-Glo*** rule.  Maple Lawn's Brief at 9.

Additionally, Appellants contend that the trial court, in its opinion, improperly addressed the issue of summary judgment as to entities previously removed from the litigation by stipulation of the parties.  Appellants' Brief at 30-31.  Maple Lawn posits that the trial court's gratuitous discussion concerning the additional defendants was not error.  Maple Lawn's Brief at 32-33.  In light of our conclusion that the trial court erred in concluding that the defect was trivial and open and obvious, we need not address these arguments.